UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JASON LEE ROUSH,

    Defendant.

Case No. 07-CR-169

---

## PLEA AGREEMENT

---

1.    The United States of America, by its attorneys, Steven M. Biskupic, United States Attorney for the Eastern District of Wisconsin, and Penelope L. Coblentz, Assistant United States Attorney, and the defendant, Jason Lee Roush, individually and by attorney Michael L. Chernin, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.    The defendant has been charged in three counts of a three-count indictment, which alleges violations of Title 18, United States Code, Sections 2422(b) and 2423(b).

3.    The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with

which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following count as set forth in full as follows:

### *COUNT THREE*

### *THE GRAND JURY FURTHER CHARGES THAT:*

*From on or about February 10, 2007, to on or about March 24, 2007, in Illinois, and within the Eastern District of Wisconsin, and elsewhere,*

### *JASON LEE ROUSH*

*used a facility and means of interstate commerce to knowingly attempt to persuade, induce, entice and coerce a minor to engage in sexual activity, for which any person can be charged with a criminal offense, namely, under Wisconsin Statute 948.02 (2), second degree sexual assault of a person who has not attained the age of 16 years.*

*All in violation of Title 18, United States Code, Section 2422(b).*

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

2

Milwaukee Police Department (MPD) Detective Doreen Andrews was involved in an undercover investigation as a member of the department's High Technology Unit which investigates violations of criminal laws involving child exploitation. Using the computer screen identity "Maria"[1] a 14-year old female, Maria engaged in regular, repeated on-line chats and telephone contact beginning on February 10, 2007, and ending on March 24, 2007, with an individual who used the Yahoo instant messenger screen name, firehawk_x95. This individual was later identified as Jason Lee Roush, of 743 Roseanne Street, Lockport, Illinois. During these contacts, Roush told Maria that he lived in Illinois. Maria told Roush that she resided in Milwaukee, Wisconsin with her mother.

Maria's Yahoo profile shows a picture of a Hispanic female, which in actuality is a photo of a Milwaukee Police Aide taken when she was 14 or 15 years old. Within two minutes during the first on-line chat with Maria on February 10, 2007, Roush asked Maria's age. When Maria said she was 14, Roush responded that he was 26 and commented that he was 12 years older then her. He also stated that his age was almost "double" of hers. During the on-line chat and in subsequent on-line chats, Roush discussed and suggested meeting Maria and Maria's 14 year old girlfriend "Kim" for the purpose of Roush engaging in sexual intercourse and other

---

[1] Hereinafter, Detective Andrews will be referred to as "Maria."

sexual activity with Maria and Kim. During the initial on-line chat, Roush showed Maria a photo of his penis through photo share. When Roush wanted to know what Maria looked like, she directed him to her Yahoo profile picture. Roush was also interested in knowing the size of Maria's breasts.

Roush in a subsequent on-line chat with Maria and Kim masturbated over the webcam while he believed they were watching him. Roush continued this activity for approximately one hour as he chatted.

Roush later asked if they were both interested in having sexual intercourse with him. Maria responded that they were. Roush asked Maria to describe Kim and in particular he was interested in Kim's breast size. Maria told Roush that Kim did not want to have sexual intercourse with Roush because she was a virgin and did not want to get pregnant. Roush assured Maria that Kim would not get pregnant if she had sex with him. Roush asked Maria where they could have sexual contact if he came to Milwaukee. When Maria said she did not know, Roush said they would need to get a hotel room if Kim agreed to engage in a "3some" with them. During this on-line chat, Roush asked, "there's no cops or anything right," and continued, "since you do no how old I am right."

During subsequent on-line chats, Roush expressed a desire to engage in vaginal and anal intercourse with both Maria and Kim.

4

During an on-line chat on March 22, 2007, Roush asked Maria if she missed him and if she was his girlfriend. He again asked if Kim was interested in joining them for sexual activity and asked if Maria wanted him to come to Milwaukee on Saturday. Maria asked Roush if he was just "playin," and Roush replied, "no if I can come up Saturday I will I just don't wanna get thrown in jail." He expressed concern, and Maria told him, "k then don't come." Roush responded, "I want to." He then asked, "how old are you again?" Maria told him again that she was 14. She added, "I don't want u to get in trouble for real...lets juz not."

Roush replied that he wanted to come there, and again asked Maria where she lived. She told him that she lived on the south side of Milwaukee. They discussed particulars as to what and where they would spend their time together. Maria told Roush that it depended on what they were going to do, and Roush replied he wanted to engage in sexual intercourse as well as oral sex with her. Roush told her he would not engage in sex with her without a condom when Maria expressed concern about becoming pregnant. Roush again displayed a photo of his penis on his chat screen. Roush asked Maria if she loved him, and if she and Kim would let him, engage in anal intercourse. Roush asked if they should get a room, and he asked Maria to call hotels to find out the prices. Shortly after that, Roush provided Maria with his cellular telephone number and asked her to call him when she got

5

minutes for her phone. During a later on-line chat on the same day, Roush sent an invitation for Maria to view his webcam, and she accepted. Roush masturbated over the webcam and wrote that he wanted to have sexual intercourse with her. Roush continued to masturbate during the course of the chat.

Roush told Maria that he was coming to Milwaukee, and that he would call her before he left. He added that she should be ready to have sex. The on-line chat ended when Roush stated he was leaving to drive to Milwaukee and that he would call her when he arrived. That concluded the last on-line chat "Maria" had with Roush. On March 24, 2007, Roush was arrested when he arrived at the prearranged meeting location in Milwaukee. Roush was searched immediately after his arrest and three condoms were recovered from Roush's rear pants pocket.

Roush provided a statement after waiving his Miranda rights. He admitted to chatting on-line with Maria, whom he believed to be a 14-15 year old female, and to arranging to meet Maria for sexual contact, specifically for her to perform oral sex on him and to engage in sexual intercourse with her. He admitted that the chats occurred from his laptop in his residence, at 743 Rosanne Street, Lockport, Illinois He also admitted to attempting to meet Maria's friend, Kim, whom he believed was the same age as Maria, and had hoped to have sexual contact, in the form of sexual intercourse with Kim. Roush admitted that he had traveled from Lockport, Illinois

6

to Milwaukee, Wisconsin on the date of his arrest for the purpose of meeting with Maria and Kim for sexual contact.

Roush acknowledges that if he had sexual contact with Maria or Kim, he could have been charged with a criminal offense, namely under Wisconsin Statute § 948.02(2), second degree sexual assault of a person who has not attained the age of sixteen years.

Roush admits that he used a facility or means of interstate commerce to communicate with Maria. Specifically, Roush acknowledges that a telephone is considered a facility or means of interstate commerce, whether it is used in the traditional manner, or whether it is used in conjunction with a computer and modem. In addition, Roush acknowledges the Internet is considered a facility or means of interstate commerce.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine count: not less than 10 years nor more than life and

$250,000. The count also carries a mandatory special assessment of $100.00, and a minimum of five years and up to life of supervised release.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNTS

8. The government agrees to move to dismiss the remaining counts of the indictment at the time of sentencing.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of use of a facility in interstate commerce to attempt to knowingly persuade a person under the age of 18 to engage is a sexual act, as set forth in Count Three, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant used a facility or means of interstate commerce, that is, the telephone or the Internet;
> Second, that the defendant used the telephone or the Internet to knowingly attempt to persuade or induce or entice or coerce a person the defendant believed to be under eighteen years of age, to engage in sexual activity; and
> Third, that the sexual activity would have been in violation of Wisconsin state law.

8

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge,

9

understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

10

## Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count Three is **24** under Sentencing Guidelines Manual §2G1.3(a).

## Specific Offense Characteristics

17. The parties acknowledge and understand that the government will recommend to the sentencing court that a **two-level** increase for use of a computer to persuade, entice, coerce a minor to engage in prohibited sexual conduct under Sentencing Guidelines Manual §2G1.3(b)(3) is applicable to the offense level for the offense charged in Count Three for an adjusted level of **26**.

## Special Conditions for Supervised Release

18. The defendant agrees to register as a sexual offender pursuant to United States Sentencing Guidelines Manual Section 5D1.3(a)(7).

19. Defendant understands and agrees that using the computer for any purpose which might further sexual activity is strictly prohibited. Such use includes, but is not limited to, the following: possession of sexually explicit material in any form; sexually related chat or email exchange; visiting or joining chat rooms which contain sexually explicit conversations; visiting/viewing sexually explicit material on web sites; web sites that contain nudity or sexually explicit materials; downloading binary files, UUE files, MIME files, AVI files, MPG files, Real Player

11

files, Windows Media Files, digital images in any format, text files or multi-media material that is sexual in nature; or visiting and/or subscribing to usergroups, newsgroups, or list servers which contain sexual content.

20. Defendant will provide the United States Probation Department with a current list of all equipment used by the defendant on his computer, including back-up systems. Defendant will keep this list current.

21. Defendant agrees to install, or allow to be installed at his own expense, equipment and/or software to monitor or limit computer use or information stored on the computer.

22. Defendant agrees and voluntarily consents that his computer may be examined and/or searched at any time, announced or unannounced, by the United States Probation Department or its Designee to verify compliance with these special conditions of supervision. The defendant understands and agrees that his computer, related equipment, and storage devices are subject to seizure by the United States Probation Department or its Designee if, during an announced or unannounced examination of the computer or other media, any evidence of computer use prohibited by this plea agreement is discovered.

## Acceptance of Responsibility

23. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual

12

§ 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

24. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

25. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

26. The government agrees to recommend a sentence of the statutory minimum of 120 months of imprisonment.

13

## Court's Determinations at Sentencing

27. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

28. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

29. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

## Special Assessment

30. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Forfeiture

31. The defendant agrees that all properties listed in the indictment, which were used to facilitate such offense. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

## DEFENDANT'S WAIVER OF RIGHTS

32. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing

15

Case 2:07-cr-00169-JPS   Filed 09/11/07   Page 15 of 20   Document 19

    prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

  c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

  d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

  e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

33. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record,

16

and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

34. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

35. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## Further Civil or Administrative Action

36. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to

17

contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

37. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

38. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

39. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

40. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the

18

right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement.

## VOLUNTARINESS OF DEFENDANT'S PLEA

41. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

19

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 9/11/07

JASON LEE ROUSH
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 09/11/07

MICHAEL L. CHERNIN
Attorney for Defendant

For the United States of America:

Date: Sept. 11, 2007

STEVEN M. BISKUPIC
United States Attorney

Date: 9-11-07

PENELOPE L. COBLENTZ
Assistant United States Attorney

20